**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **THE CITY OF NEW ORLEANS** | * | **CIVIL ACTION NO. 19-CV-8290** |
| | * | |
| | * | **SECTION: T(5)** |
| **VS** | * | |
| | * | **JUDGE GREG G. GUIDRY** |
| | * | |
| **APACHE LOUISIANA** | * | **MAGISTRATE JUDGE NORTH** |
| **MINERALS, LLC, ET AL.** | * | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO GULF SOUTH'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff, the City of New Orleans ("the City" or "New Orleans"), respectfully submits this opposition to the Motion for Summary Judgment (the "Motion", R. Doc. 285) of Defendant Gulf South Pipeline Company, LLC ("Gulf South"). Gulf South is not entitled to judgment as a matter of law that the City's claims under the State and Local Coastal Resources Management Act of 1978, La. R.S. §§ 49:214.21 *et seq.* ("SLCRMA") are prescribed because enforcement actions under SLCRMA are not subject to liberative prescription.

Under Civil Code article 3457, "[t]here is no prescription other than that established by legislation." Like the conservation statute at issue in *Tureau v. BEPCO, L.P.*, the legislature did not establish a prescriptive period applicable to SLCRMA. 2021-0856 (La. 10/21/22), 351 So. 3d 297, 301. Moreover, like *Tureau*, the City is pursuing regulatory enforcement of an environmental statute to obtain injunctive relief—namely, restoration of the impacted marshlands—for the public's benefit. As such, this Court should find that regulatory enforcement actions under SLCRMA are imprescriptible.

Further, even if this Court finds that that the instant action is subject to a prescriptive period, Gulf South failed to meet its burden of showing that there is no genuine issue of material fact as to when the City knew it had a claim against Gulf South for its failure to abide by the permitting and regulatory requirements imposed by SLCRMA. Accordingly, Gulf South's motion should be denied.

## I.    Background

In 2019, the City filed the instant suit against various defendants, including Gulf South, seeking to exercise its enforcement authority under SLCRMA in response to the defendants' failures to obtain or comply with the statutory and permitting requirements associated with their oil and gas activities in the Orleans Coastal Zone. R. Doc. 1-1.

SLCRMA declares that it is the state's public policy "[t]o protect, develop, and where feasible, restore or enhance the resources of the state's coastal zone" and "[t]o develop and implement, on a comprehensive and coordinated basis, an integrated coastal protection program in order to reduce if not eliminate the catastrophic rate of coastal land loss in Louisiana." La. R.S. § 49:214.22(1) and 2(b)(5). Specifically, SLCRMA regulates and requires permits for "uses" of Louisiana's Coastal Zone—the boundaries of which entirely envelop the City. La. R.S. § 49:214.30. A coastal "use" is "any use or activity within the coastal zone which has a direct and significant impact on coastal waters." La. R.S. § 49:214.23(13). Pursuant to SLCRMA, a coastal use permit ("CUP") is required for "[a]ll mineral activities, including the exploration for, and production of oil, gas, and other minerals, all dredge and fill uses associated therewith, and all other associated uses," and "[a]ll pipelines for the gathering, transportation or transmission of oil, gas and other minerals." La. R.S. § 49:214.25(A)(2)(f), (g).

Importantly, the implementing regulations of SLCRMA require that "[m]ineral and production sites shall be cleared, revegetated, detoxified, and otherwise restored as near as

practicable to their original condition upon termination of operations to the maximum extent practicable." LAC 43:I.719(J). The implementing regulations further provide that linear facilities, like pipelines and their associated canals or trenches, "shall be backfilled or otherwise restored to the pre-existing conditions upon cessation of use for navigation purposes to the maximum extent practicable" and "the best practical techniques for site restoration and revegetation shall be utilized." LAC 43:I.705(N), (O). Regarding enforcement authority, SLCRMA provides that "[t]he secretary, the attorney general, an appropriate district attorney, or a local government with an approved program may bring such injunctive, declaratory, or other actions as are necessary to ensure that" uses of the coastal zone comply with permitting requirements. La. R.S. § 214:36(D).[1] As a local government with an approved coastal management program, the City is empowered to enforce violations of SLCRMA.[2]

In 1982, Gulf South's corporate predecessor, United Gas Pipeline Company, applied for and was granted a CUP (permit no. 19820182, referred to hereinafter as the "UGPC CUP") to dredge a trench and install a 2.9-mile pipeline which cut across a fragile area of the marsh in the Orleans Coastal Zone.[3] The pipeline trench is located within the East Orleans Land Bridge, which protects the City and surrounding communities from hurricanes and storm surge.[4] The UGPC CUP required the trench to be backfilled and a minimum of seven protective structures, or plugs, to be

---

[1] The Louisiana Department of Conservation and Energy (formerly, the Louisiana Department of Energy and Natural Resources) implements the Louisiana Coastal Resources Program under the authority of SLCRMA.

[2] *See* the transcript of the November 12, 2025 deposition of the City of New Orleans, through Austin Feldbaum, which is attached here as **Exhibit A**, at 28:2-5, and the May 1985 Orleans Parish Coastal Management Program, attached as **Exhibit A-1** ("Q. And the City of New Orleans' Local Coastal Program, is that approved by the State of Louisiana today? A. To my knowledge, yes.").

[3] *See* the Declaration of John A. Lopez, Ph.D., attached here as **Exhibit B**, at ¶¶ 7, and 8, and the expert report produced by Dr. Lopez, attached as Exhibit 2 thereto.

[4] *See Id.*

installed in specified locations along the length of the pipeline.[5] However, the trench was not backfilled, and at least four of the seven required plugs were never constructed.[6]

In 1995, Gulf South's corporate predecessor, Koch Industries Inc. ("Koch"), was granted CUP 19951135 (the "Koch CUP") to abandon and remove the pipeline that was installed pursuant to the UGPC CUP.[7] Specifically, some segments of the pipeline were planned for removal, while others were abandoned in place.[8] According to the permit application, Koch was required to backfill the pipeline trench in the areas where the pipeline was removed, and the depth of soil cover was to "remain the same and undisturbed" along the abandoned portions of the pipeline.[9] Importantly, during the permitting process, Koch submitted schematics which falsely depicted the pipeline trench dredged pursuant to the UGPC CUP as fully backfilled.[10] Thus, the Koch CUP presupposed that the trench was already backfilled, and required it to remain that way. Further, SLCRMA's implementing regulations required the trench to be backfilled and restored. LAC 43:I.705(N), (O).[11]

Additionally, the Koch CUP required installation of bank stabilization measures where the pipeline intersected other waterways.[12] Once again, the trench was not backfilled, all required protective structures were not installed, and the trench remains open to this day.[13] Of note, Gulf South's pipeline trench is accessible only by airboat and runs through privately-owned property.[14] Importantly, survey data regarding the condition of the pipeline trench at issue was not available

---

[5] *See Id.*
[6] *See Id.*
[7] *See Id.* at ¶ 9.
[8] *See Id.*
[9] *See Id.*
[10] *See Id.*
[11] *See Id.*
[12] *See Id.*
[13] *See Id.* at ¶¶ 9, 11.
[14] *See Id.* at ¶ 10.

until 2022.[15] While Gulf South's failures to abide by the requirements of their CUPs and associated regulations are not easily discernible, expert analysis of the 2022 survey data revealed that Gulf South's failure to backfill the pipeline trench and install protective structures has altered the natural hydrology of the area, and without restoration, it will continue to contribute to worsening erosion and coastal land loss.[16]

In its Motion, Gulf South now asserts that it is entitled to judgment as a matter of law that the City's claims are time-barred. At the outset, Gulf South correctly recognizes that "SLCRMA does not contain an express liberative prescription period[.]" R. Doc. 285-1 at 2. Nevertheless, Gulf South goes on to assert that this Court should apply the one-year prescriptive period for tort actions codified at La. Civ. Code Art. 3492, or the ten-year prescriptive period for personal actions under La. Civ. Code art. 3499. Gulf South fails to acknowledge the well-established principle that prescriptive periods should not be applied analogously. *See State ex rel. Tureau v. BEPCO, L.P.*, 351 So. 3d at 303-04.

Next, Gulf South argues that the City's claims are prescribed because the City has had knowledge of the alleged SLCRMA violations for "more than a decade before it filed suit." R. Doc. 285-1 at 8. In support of this contention, Gulf South provides only vague assertions that the City had actual or constructive knowledge of Gulf South's failure to abide by its permitting and regulatory requirements because the City was copied on correspondence related to the issuance of its CUPs, and because SLCRMA calls for the state and local governments to create field surveillance programs. Gulf South cites only one piece of documentary evidence—a map from the City's 1985 Coastal Management Plan—to support its contention that the City knew that Gulf South failed to install protective structures and backfill the pipeline trench at issue as required.

---

[15] *Id.* at ¶¶ 11, 12.
[16] *See Id. at* ¶¶ 10, 11, 12.

Throughout its Motion, Gulf South neglects to acknowledge two key points: (1) SLCRMA's lack of a prescriptive statute, coupled with the Louisiana Supreme Court's holding in *Tureau*, which together indicate that actions brought under SLCRMA are imprescriptible; and (2) the existence of a CUP does not equate to knowledge of noncompliance with the permit's requirements. Either of these point, independently, is fatal to Gulf South's Motion.

## II.    Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "An issue is material if its resolution could affect the outcome of the action." *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co*., 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150-51 (2000). All reasonable inferences are drawn in favor of the nonmoving party. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

## III.    Argument

### A.  The City's SLCRMA claims are not subject to liberative prescription

Gulf South's Motion rests on the unfounded assumption that claims brought under SLCRMA are subject to liberative prescription. Louisiana Civil Code article 3457 provides that "[t]here is no prescription other than that established by legislation." In *Tureau v. BEPCO, L.P.*, the Louisiana Supreme Court held that environmental regulatory enforcement actions seeking injunctive relief are imprescriptible. 351 So. 3d at 301. Here, like *Tureau*, the City seeks to enforce

6

an environmental statute to obtain injunctive relief in the form of coastal restoration. As such, and for the reasons set forth more fully below, this Court should find that the City's SLCRMA claims are imprescriptible.

It is well settled that "[c]ourts should resolve doubts about a prescription question in favor of giving the litigant his day in court." *State ex rel. Tureau v. BEPCO, L.P.*, 351 So. 3d at 304. *See also Bustamento v. Tucker*, 607 So. 2d 532, 537 (La. 1992) (citing *Lima v. Schmidt*, 595 So. 2d 624, 629 (La. 1992)) ("under Louisiana jurisprudence, prescriptive statutes are to be strictly construed against prescription and in favor of the obligation sought to be extinguished; of two possible constructions, that which favors maintaining, as opposed to barring, an action should be adopted."). Further, "not all actions are subject to prescription." *State ex rel. Tureau v. BEPCO, L.P.*, 351 So. 3d at 304.

*Tureau* dealt with Louisiana's conservation statute, which provides for remediation of environmental damage caused by oil and gas exploration and production and, like SLCRMA, does not contain an express liberative prescription period. *Id.* at 301-02. There, the plaintiff sought remediation of contaminated properties under the statute's citizen suit provision, codified at La. R.S. § 30:16. *Id.* The Court noted that citizen suits are unlike other private causes of action because "any benefit from the lawsuit, whether injunctive or monetary, inures to the public." *Id.* at 304. The Court further noted that because "any relief granted shall be issued in favor of the State[,]" La. R.S. § 30:16 is "intended for the benefit of the public[,]" and "accomplishes the purpose of the State's environmental laws and regulations (*i.e.*, to preserve, restore, and conserve natural resources by the prevention and remediation of contamination)." *Id.* at 306.

Ultimately, the Court rejected the defendants' arguments that the one-year prescriptive period for tort actions codified at La. Civ. Code Art. 3492, or the ten-year prescriptive period for

personal actions under La. Civ. Code art. 3499, should apply to actions brought under La. R.S. § 30:16. *Id.* at 305. Instead, the Court held that La. R.S. § 30:16 actions are imprescriptible because the statute does not contain a specific prescriptive period, and because such suits: (1) are regulatory enforcement actions which provide public, rather than private, benefits; (2) carry out the "intent and purpose of Louisiana's conservation law"; and (3) seek only injunctive relief. *Id.* at 308. The Court reasoned that "[t]his result promotes the State's interest in the preservation, maintenance, and restoration of its natural resources for the benefit of the public as a whole, ensures enforcement of environmental laws and regulations, and adheres to the intent of the legislature and the policy written into the constitution." *Id.*

The Court's reasoning in *Tureau* aligns squarely with the City's claims under SLCRMA. The fact that the instant suit is brought by the City—a political subdivision of the State of Louisiana—rather than by a private citizen lends to an even more straightforward analysis. There is no question that through this suit, like *Tureau*, the City seeks to enforce environmental regulations for the benefit of the public. In fact, the text of SLCRMA itself explicitly requires that any monetary benefit from enforcement actions "shall be used for integrated coastal protection, including coastal restoration, hurricane protection, and improving the resiliency of the coastal area." La. R.S. § 49:214.36(O)(2). Thus, like *Tureau*, the State will receive the benefit of any relief granted in this case. Further, the City's suit accomplishes the purposes of SLCRMA. Namely, the City seeks to "[t]o protect . . . restore or enhance the resources of the state's coastal zone" by enforcing regulatory and permitting requirements and rectifying Gulf South's noncompliance with the same. La. R.S. § 49:214.22(1). The City seeks equitable relief in the form of restoration of the pipeline trench at issue, as required by the applicable permits and regulations, which in turn serves the public interest of reducing the "the catastrophic rate of coastal land loss in Louisiana." La. R.S.

§ 49:214.22 2(b)(5). In sum, because SLCRMA does not contain an applicable prescriptive period, and because this suit is a regulatory enforcement action brought by the City seeking injunctive relief for the benefit of the public in furtherance of the intent and purpose of SLCRMA, this Court should find that, like the conservation statute in *Tureau*, suits under SLCRMA are not subject to liberative prescription.

### B. Prescriptive periods for tort and personal actions cannot be applied to SLCRMA by analogy

In *Tureau,* the Court declined to apply the one-year prescriptive period for tort actions codified at La. Civ. Code Art. 3492, or the ten-year prescriptive period for personal actions under La. Civ. Code art. 3499, to conservation suits brought under La. R.S. § 30:16. The Court noted that "[t]here is no prescription other than that established by legislation[,]" and it is well established that "[p]rescriptive periods may not be extended by analogy." *State ex rel. Tureau v. BEPCO, L.P.*, 351 So. 3d at 303-04 (first quoting La. C.C. art 3457, then quoting *Caldwell Parish Police Jury v. Town of Columbia*, 40,865 (La. App. 2 Cir. 3/15/06), 930 So.2d 65, 69, *rev'd on other grounds on reh'g*, 06-1565 (La. App. 2 Cir. 10/6/06), 938 So.2d 75). *See also Duer & Taylor v. Blanchard, Walker, O'Quin & Roberts*, 354 So.2d 192, 194 (La. 1978) (prescription statutes "cannot be extended from one action to another, nor to analogous cases beyond the strict letter of the law."). The *Tureau* Court noted that "citizen suits seeking to enforce environmental regulations" are "nothing like private tort claims." *State ex rel. Tureau v. BEPCO, L.P.*, 351 So. 3d at 304-05. The Court reasoned that in La. R.S. § 30:16 citizen suits, unlike private suits, the plaintiff seeks enforcement of environmental regulations for the benefit of the public, without "obtaining a personal award of any kind." *Id.* at 305-06.[17] Similarly, in *Salvation Army v. Union Pacific*

---

[17] Notably, the nature of a personal action as one that inures to the benefit of a private person or entity, rather than to the benefit of the public, is evident in its definition. *See* La. C.C.P. art. 422, which defines a personal action as "one

*Railroad, Inc.*, the court refused to apply the prescriptive period for tort actions to a citizen suit brought under the Louisiana Environmental Quality Act. *Salvation Army v. Union Pacific R.R., Inc.*, No. 616-CV-0347, 2017 WL 3528903 (W.D. La. 3/8/17).

Here, Gulf South's argument that the prescriptive period for tort actions under La. Civ. Code art. 3492, or the ten-year prescriptive period for personal actions under La. Civ. Code art. 3499, should apply to the City's SLCRMA claims by analogy must be rejected. The legislature declined to enact a prescriptive statute that applies to SLCRMA claims, and under Louisiana jurisprudence, any attempt to analogously apply prescriptive statutes that pertain to entirely distinct actions must fail. Moreover, even if this Court were inclined to apply a prescriptive statute by analogy, SLCRMA claims are not analogous to tort or personal actions. As the court reasoned in *Tureau*, actions seeking regulatory enforcement without any private benefit—exactly what the City attempts to do here—are fundamentally different from traditional private tort or personal actions. Thus, this Court must find that the prescriptive periods outlined in Articles 3492 and 3499 are not applicable to this case.

### C. A Genuine Dispute of Material Fact Exists as to the Applicability of *Contra Non Valentem*

As argued above, the Court should deny Gulf South's summary judgment motion on the basis that the City's SLCRMA claims are imprescriptible. Accordingly, this Court need not examine the issue of *contra non valentem*, or the discovery rule, in order to deny Gulf South's Motion. However, if the Court finds that prescription applies to SLCRMA claims and turns to the issue of *contra non valentem*, the Court should find that Gulf South has failed to meet its burden

---

brought to enforce an obligation against the obligor, personally and independently of the property which he may own, claim, or possess."

of showing that there is no genuine dispute as to when the City knew or should have known of its cause of action under SLCRMA.

The City's claims are not barred by prescription because *contra non valentem* provides that prescription is suspended for liability "until the plaintiff knew, or reasonably should have known of the damage." *See Marin v. Exxon Mobil Corp.*, 2009-2368 (La. 10/19/2010), 48 So. 3d 234, 245. ("In cases involving property damage, the fourth category of *contra non valentem*, otherwise known as the 'discovery rule,' is encompassed in the prescriptive period proscribed by La. C.C. art. 3493, as both essentially suspend prescription until the plaintiff knew, or reasonably should have known of the damage."). The discovery rule is a subcategory of the *contra non valentem* doctrine and applies equally in actions governed by ten-year and one-year prescriptive periods. *See Plaquemines Par. Comm'n Council v. Delta Dev. Co.*, 502 So. 2d 1034, 1054-61 (La. 1987) (applying *contra non valentem* to action governed by ten-year prescriptive period).

In property erosion cases such as this, "actual notice must result from overt knowledge of damage **to the specific property at issue**." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.*, 290 F.3d 303, 321 (5th Cir. 2002) (emphasis added). Likewise, the constructive knowledge inquiry is intensely fact-based, "depends almost entirely on the particular circumstances," and requires "a case-by-case analysis." *Id.*; *Marin*, 48 So. 3d at 246; *see also Knaps v. B&B Chemical Co.*, 828 F.2d 1138, 1139-40 (5th Cir. 1987) (question of whether plaintiff had constructive knowledge required further individual inquiry into the plaintiff's particular circumstances and the reasonableness of his actions). "Mere apprehension that something might be wrong" does not make delay in filing an action unreasonable, *Griffin v. Kinberger*, 507 So.2d 821, 823 (La. 1987), nor does a general knowledge that one has been injured. *Knaps*, 828 F.2d at 1139-40. Instead, the plaintiff must obtain knowledge of (1) the breach, (2) the damage, and,

11

critically, (3) the causal link between the breach and the damage before the plaintiff can be said to have "constructive notice" of its cause of action. *Id.* Where expert evaluation is required to confirm the link between the defendant's breach and the damage, constructive knowledge cannot be inferred until the expert evaluation is concluded. *See Columbia Gulf*, 290 F.3d at 323.

Here, there is a genuine dispute as to what, and when, the City knew or should have known about the conditions of Gulf South's pipeline trench. Gulf South points to the fact that the City's representatives were copied on communications during the approval process for the UGPC and Koch CUPs as evidence of the City's actual knowledge of the conditions of the pipeline trench at issue. However, knowledge of the existence of a permit does not automatically equate to knowledge that the permit holder failed to comply with its requirements. Without some indication of non-compliance, the City had no reason to commission an expert investigation comparing the as-built condition of the pipeline trench against the technical specifications in permits issued decades earlier. This is particularly true because Koch provided documents with its 1995 permit application that inaccurately indicated that trench at issue had been backfilled in compliance with permitting requirements.[18] Further, none of the evidence presented by Gulf South establishes the City's actual or constructive knowledge of the conditions of Gulf South's pipeline trench.

Gulf South's reliance on *Wagoner v. Chevron USA Inc.*, is misplaced. In *Wagoner*, the plaintiffs were individual property owners who sought damages for contamination from waste pits associated with past oil and gas operations on the property. *Wagoner v. Chevron USA Inc.*, 45,507 (La. App. 2 Cir. 8/18/10), 55 So. 3d 12, 16, *on reh'g* (Nov. 24, 2010), *writ denied*, 2010-2773 (La. 3/2/12), 83 So. 3d 1032. There, the Court found that the plaintiffs' tort claims were prescribed because they "could have easily acquired knowledge of the property damage . . . within their first

---

[18] *See* **Exhibit B** at ¶ 9.

year of owning the property," in part because information regarding the history of oil and gas operations was available in public records, and in part because plaintiffs knew that the mineral rights to the property were separately held. *Id.* at 25. Here, the City does not own, nor can it easily access, the property through which Gulf South's pipeline trench runs.[19] Moreover, unlike *Wagoner*, where the property damage was visible contamination, the City's claims arise from technical violations of permit conditions that could only be determined by expert comparison of permit requirements against actual construction.[20] Critically, survey data revealing the condition of the pipeline trench at issue was not available until 2022.[21] Further, due to the misleading figures included in Koch's 1995 permit application, publicly available documents incorrectly suggest that Gulf South was in compliance with its permitting obligations to backfill the pipeline trench at issue.[22]

Gulf South also points to the section of the SCLRMA which calls for the secretary and local governments to engage in "field surveillance program[s]" and draws the ill-founded and factually unsupported inference that in light of this monitoring directive, the City must have actual or constructive knowledge of Gulf South's failure to abide by the requirements of its CUPs. La. R.S. § 49:214.36(A). However, this argument grossly overlooks the vast nature of the permitting landscape in the Orleans Coastal Zone. Since 1980, *hundreds* of CUPs have been issued in the Orleans Coastal Zone for a variety of coastal uses.[23] Nothing in SLCRMA, its implementing regulations, or the City's 1985 Coastal Management Plan demands that the City monitor every individual CUP for strict compliance with the requirements of each permit. In fact, SLCRMA's

---

[19] *See Id.* at ¶ 10.
[20] *See Id.*
[21] *Id.* at ¶¶ 11, 12.
[22] *See Id.* at ¶ 9.
[23] *See Id.* at ¶ 6.

implementing regulations only require local coastal management programs such as the City's to monitor local coastal use permits. LAC 43:I.725(C)(1)(f).[24] Here, the UGPC and Koch CUPs were issued by the State because they involve issues of state concern.[25] Because Gulf South's CUPs were State, rather than local, coastal use permits, the City is not and never was required to monitor these permits for compliance. Further, the City does not have the resources to monitor each and every CUP in the Orleans Coastal Zone with such a level of granularity.[26] Gulf South's argument that the City must have actual or constructive knowledge of *every* permitting violation in the Orleans Coastal Zone is a fiction that fails to take the reality of the statutory requirements and the City's limited resources into account.

Further, Gulf South points to only one piece of evidence from the City's 1985 Coastal Management Plan—a map that includes the platform to which one end of Gulf South's pipeline was connected—to support its conclusion that the City had actual knowledge of Gulf South's SLCRMA violations. R. Doc. 285-1 at Exhibit A-4. However, the map does not contain any

---

[24] The implementing regulations regarding guidelines for approval of local coastal management programs provide in part that local programs should include "a description of the authorities and administration arrangements regulating uses of local concern, for reviewing, issuing, and **monitoring local coastal use permits**, and for enforcing the local program . . ." LAC 43:I.725(C)(1)(f) (emphasis added).

[25] Under SLCRMA, "uses of state concern" include "[a]ny dredge or fill activity which intersects with more than one water body," "[p]rojects involving use of state owned lands or water bottoms," "[a]ll mineral activities, including exploration for, and production of oil, gas, and other minerals, all dredge and fill uses associated therewith, and all other associated uses," "[a]ll pipelines for the gathering, transportation or transmission of oil, gas and other minerals," and "[e]nergy facility siting and development." La. R.S. § 49:214.25(A)(1)(a), (b), (0, (g), (h). *See also* R. Doc. 285-4 (Gulf South's Exhibit A-3 (pt. 1)) and R. Doc. 285-6 (Gulf South's Exhibit A-3 (pt. 2)) (permit files showing that the UGPC and Koch CUPs were issued by the State, not the City).

[26] *See* **Exhibit A** at 57:10-58:10("Q. Do you know if the City's -- the folks who administer the City's Coastal Program, do you know if they have an enforcement -- an enforcement program that goes with that? Do they enforce the Coastal Program? A. It's my understanding. Q. Okay. Would they go out there as part of enforcement activities? A. You know, I don't know that the City is in possession of the equipment to access some of the more remote areas that we're discussing. Q. So the City doesn't own a boat? A. I believe we've got a few for high water rescue purposes that are controlled by EMS and the fire department. . . . Q. If the City wants to send someone out to visit a particular part of that area, the City has the capability to do so; right? A. No. We do not have -- we are not in possession of the resources. In that case the State assisted us.").

imagery of or information about the condition of the pipeline trench at issue. Thus, Gulf South's argument must fail because it cannot provide any evidence to support its unfounded assertions that the City had knowledge of Gulf South's failure to comply with its permitting requirements.

In short, Gulf South is unable to present any evidence that is not subject to genuine dispute that would show that it is entitled to judgment as a matter of law that the City knew or should have known more than one year (much less ten years) prior to filing this suit of Gulf South's failure to backfill the pipeline trench and install protective structures as required by its CUPs issued pursuant to SLCRMA. Accordingly, if this Court finds it necessary to address *contra non valentem*, summary judgment should be denied because of the presence of disputed issues of material fact.

## IV.    Conclusion

Gulf South's Motion for summary judgment on prescription should be denied. Gulf South is not entitled to judgment as a matter of law because the City's regulatory enforcement claims under the SLCRMA are imprescriptible. Moreover, Gulf South failed to meet its burden of showing that there is no genuine dispute of material fact regarding *contra non valentem*. For the foregoing reasons, the City respectfully requests that this Court deny Gulf South's Motion.

Respectfully submitted,

*/s/ Kevin E. Huddell*
Donesia D. Turner (# 23338)
**City Attorney**
**City of New Orleans**
1300 Perdido Street, Suite 5E03
New Orleans, Louisiana 70112
Telephone:  (504) 658-9800
Facsimile:  (504) 658-9868

Gladstone N. Jones, III (# 22221)
Kevin E. Huddell (# 26930)
Thomas F. Dixon (# 38952)
**Jones Swanson Huddell LLC**

15

601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone:  (504) 523-2500
Facsimile: (504) 523-2508

Bernard E. Boudreaux, Jr. (# 02219)
John T. Arnold (# 31601)
**Jones Swanson Huddell LLC**
One American Place
301 Main Street, Suite 1920
Baton Rouge, Louisiana 70801
Telephone:  (225) 810-3165
Facsimile: (225) 810-3169

James M. Garner (# 19589)
Joshua S. Force (# 21975)
Thomas J. Madigan, II (# 28132)
Brandon Keay (# 36528)
**Sher Garner Cahill Richter Klein & Hilbert, L.L.C.**
909 Poydras Street, 28th Floor
New Orleans, Louisiana 70112
Telephone:  (504) 299-2100
Facsimile:  (504) 299-2300

Don A. Rouzan (# 28829)
Dana J. Henry (# 26654)
**Don A. Rouzan & Associates, LLC**
6600 Plaza Drive, Suite 200
New Orleans, Louisiana 70127
Telephone: (504) 821-6605
Facsimile: (504) 821-6683

— and —

J. Michael Veron (# 7570)
Turner D. Brumby (# 33519)
Peyton Pawlicki (# 37826)
**Veron, Bice, Palermo & Wilson, L.L.C.**
721 Kirby St. (70601)
P.O. Box 2125
Lake Charles, Louisiana 70602
Telephone:  (337) 310-1600
Facsimile:  (337) 310-1601

*Attorneys for Plaintiff*
*THE CITY OF NEW ORLEANS*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 1, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.  Notice of this filing will be sent to all counsel of record by electronic mail and/or regular mail.

*/s/ Kevin E. Huddell*
Kevin E. Huddell
